Judge Rolison, Judge Bivey, and Judge Burns, my name is Richard Martinez and it is my privilege to be here representing Tannislado Alvarado. May I please report. We find ourselves asking you to answer questions of the Ninth Circuit that is critical to victims of retaliation who advise that retaliation of violence against Americans is still a fact. We have a situation in our country where there is a split, and there is a split that is yet unanswered with respect to what role or what rights a victim of discrimination will have to sit for retaliation of an American's disability. We know that in the 10-year period, fiscal year 1997 to fiscal year 2007, there were over a quarter million individuals who submitted to the EEOC on the basis of discrimination of violence against Americans with disabilities. We also know that, just in fiscal year 2007, there were over 26,000 claims submitted to the EEOC of retaliation on the basis of off-status, and that's it. Tannislado Alvarado is one of those victims. On the eve of trial, he was denied that opportunity to have those rights as provided for in the 1991 Civil Rights Act. Counsel, one circuit court has answered this question, and not in favor of your client's position. Tell us why we should create a circuit split and move the other way. Yes, Your Honor. There are a number of reasons. The Kramer decision, Your Honor, is, with all due respect, I think it was simplistic. It was too rigid. It failed to appreciate the complexity, the structure of the statute, the structure and the interrelatedness of the Americans with Disabilities Act with Title VII and with the Civil Rights Act 1991. It was contrary, clearly contrary, to the intent of Congress. At every instance, Congress has enunciated several critical factors. One of those has been that the remedies available to victims of discrimination under the ADA, the retaliation on the basis of the court's sense of the Title VII, they've said that since passage of that Act in 1990. In addition, they have always tied to 3005 the damages for the remedies that are available. Shortly after the passage of the Act regarding the Disabilities Act, Congress doesn't pass the 1991 Civil Rights Act. But Counsel, in that Act, there is a list of remedies. There is a list of causes of why. And the section of the ADA that encompasses retaliation claims is not listed. What are we to make of that? Your Honor, we're talking about Section 102, AA2 of the 1991 Civil Rights Act, and there it's the language that respects to the specific reference to disability. There are several critical points there, Your Honor. First is, if you'll notice in that language, it says all the powers, remedies, and procedures set forth in Section 706 and 717, which is specifically referencing 42 U.S.C. 12.117. If you look, Your Honor, to the 12.117 provision, which is within the ADA, that's the remedies provision, and you look at the retaliation provision, which is the 12.203c, 12.203 says that the remedies for retaliation shall, and I'm not emphasizing the word shall, be the same as shall be those that apply to 42 U.S.C. 12.117. That's a general provision. The problem I have is that this is a more specific provision, which delineates the sections that allow compensatory and punitive damages. And generally, generally, we will give more credence to a specific provision, as opposed to a more specific   general provision. So why shouldn't we do that here? Judge Rolison, Congress did not intend, and had good reason not to mention 12.203 in this portion of the Civil Rights Act. Had it made a listing there of 12.203, and if you look at 12.203c, you'll note that this whole section provides remedies for retaliation under Title I of the ADA, that we have this reference over to 12.117, and from 12.117 to 42 U.S.C. 2005. So you have to track that. There was good reason for Congress not to mention it, because it was they had already incorporated by reference, and some of the commentators referred to as the piggyback effect, that retaliation had been piggybacked. There would be that piggyback. In addition, Judge Rolison, to consider that the application, there's some countervailing evidence, not the least of which, this is a remedial section. In particular, it creates an absurd result, Judge Rolison. The absurd result here is that no Congress has ever said that the remedies available to victims of retaliation are victims of discrimination under the ADA, which the plaintiff would take it in order, and unintended for, in my opinion, is that here, a victim of retaliation, for example, under race, under national origin, under gender, under color, under religion, gets the remedies available under the Civil Rights Act, and yet we're saying to a victim of retaliation, such as that 12.111, that no, because you have now come under the ADA, that you don't get the rights of the victim, you don't get her rights. Counsel, before the Civil Rights Act was amended, 42 U.S. Code section 2000E-5G1, was the basis for ADA retaliation claims? Yes, ma'am. Were compensatory and punitive damages available under that? No, ma'am. ADA retaliation claims have persistently been limited to equitable relief. Not since passage of the Civil Rights Act? I said historical, before passage of the Civil Rights Act. Judge Rolison, prior to the passage of the 1991 Civil Rights Act, a victim of discrimination, intentional discrimination, stood in the same shoes whether they were under race discrimination, their own gender discrimination, or if they were there. Well, the Civil Rights Act was actually promulgated to undo some cases that had been decided by the Supreme Court. That was part of it, Your Honor. There was certainly their attention to atonement. But one of the things that the Civil Rights Act did is that it provided meaningful relief to victims of discrimination through retaliation. And we have to recognize, Your Honor, that retaliation is perhaps one of the most ambiguous forms of discrimination that exists. It's a case within each of these statutes because it repeats away at each statute being successful, whether it is the person who reports discrimination as a victim of discrimination or it's the person who testifies or offers information to have that victim of discrimination. If we allow lawyers to get away, and that's what happens when you eliminate jury trial, conviction trial, certificates, and punitive trials. When you allow them to get away with this kind of act, then essentially you disintegrate the statute. You disintegrate the statute by keeping these individuals, such as Sunstein and Raffel, with no claim for action. Counsel, going back to Judge Rolison's question, so prior to 1991, someone who complained of retaliation would not have been entitled to compensatory damages? Yes, sir. Okay. Where in Section 1981 was that cured? Excuse me? Where in the 1991 Civil Rights Act was that problem cured? The problem was cured, Your Honor, with respect to the Americans with Disabilities Act under Section 102A2. And there it specifically provides that individuals who are the victims of intentional discrimination shall be entitled to three things. They're going to be entitled to the rights and remedies available under 42 U.S.C. Section 12117. And under 12117, now as amended, you have the right for jury trial, you have a right to compensatory damages, and you have a right to punitive damages. And those are all facts in this particular instance. The problem that I have, though, with that reading is that it renders superfluous the references to the two specific sections in the ADA where Congress is permitting a jury trial, compensatory and punitive damages. It makes that superfluous. Why list two if your argument is correct that with this legislation, every section of the ADA was subject to a jury trial and to other than equitable relief? Your Honor, because it's of the unit related, it's looking at the structure of the ADA. In Title V of the ADA, 42 U.S.C. 12203 does not stand alone. In fact, in 12203 subsection C, what we have is it says that for a violation or for the violation of Section 117, and 117 takes you to 42 U.S.C. 2085. It isn't facing that. But Congress was aware of that interrelatedness when it enacted the legislation as well. So we assume that Congress knows the laws that it has impacted. So with Congress's knowledge of the interrelatedness, why would it have, as Judge Burns said, why would it just articulate two sections that would trigger? Because, Your Honor, had they listed Section 12203 in this provision, then they would have created a confusion about or expanded the remedies in 12203 in a way that was not intended. Because in 12203, it is not only there the remedies that we find for Title I, but we also find the remedies for Title II and Title III violations of the ADA. And Title II and Title III have separate remedies available to them that are specified in that section. Again, you have to trace each of those provisions to track. Why did Congress specifically list 102 and 102B5 in 42 U.S.C. 1981AA2? Because, Your Honor, they listed it there because it was then making it clear that they were amending 12117. And because both of those are for intentional acts. And the intentional act of discrimination or to accommodate. Section 102 is 42 U.S.C. 12112, right? Yes, sir. Okay. So that doesn't amend 12117. It does, Your Honor, because up above where it amends it is that it says that Oh, I see where you are. They met the Disabilities Act of 1990 at 42 U.S.C. section 12117, isn't it? And then it comes down below and specifically says the violations of the 102 provisions that you talked about, 102 and 102B5. Counsel, what inference should we take from the fact that Kramer is a couple of years old, that it has caused a split among, at least among district courts. We don't yet have a circuit split. And that Congress has not taken any action to correct it. Your Honor, I think that the failure of Congress should not be interpreted as that this was what they intended. I would say just the opposite, Your Honor. When we have every objective evidence that we have of what Congress intended with the Americans with Disabilities Act is quite the opposite. That they intended that the remedies be coextensive. That they intended that a person with a disability had to say If Congress thought that the Seventh Circuit has messed this up, then why wouldn't Congress go and correct the act to make that clear? Well, I think that if you look historically, Your Honor, at when Congress intercedes, if we look most recently to the Americans with Disabilities Act amendment that was recently passed in January of this year, that the historical interventions by Congress are essentially to reverse or to approve decisions of the Supreme Court. And this issue has been on circuit to the Supreme Court from both sides and never been accepted. It has always been the position of the Ninth Circuit, I think historically the position of the Ninth Circuit, that when it comes to civil rights statutes, we look at them from a bigger, remedial status. That it's been brought in and enacted in every instance to effectuate the purpose of the statute. Here, it is to eliminate retaliation. In Tanizawa, for example, you have compelling evidence of retaliation. You have someone who did their job right for 42 months and then you find yourself like a complaining discrimination employee off by 17 days with a barrage of discrimination. His evaluations were always good. He gets no income. Olivia Sika reports that the write-ups she gave were, in fact, bulletin, that they want the truth. You have the Ninth Circuit reporting almost a year later, in June of 2003, when he again reports about discrimination. And then, within a few short days, he's fired. This is a victim of retaliation. This is a generalized employer, Your Honor. The only way to stop employers from retaliating for people who complain discrimination, report discrimination, and their employees choose not to act but to fight them, the only way you will protect employees who come forward and give testimony in support of them is to allow them to be immediately sanctioned after the remedy that was presented by Congress. If you look to the whole Act, Your Honor, it completely supports that if you look at the context, the structure, and the behavior-sanctionatory provisions, the right to be held to that which is enunciated by two of the six courts in the Ninth Circuit and certainly by the Edwards decision from New York. If you look, Your Honor, to the fact that to do anything but to apply the 1991 Act really creates an absurdity. And that absurdity is that we have now created what I characterize as a disproportionate swarm of groups. This one person who represents me and I'm silent about it is that he will not have his jury shot. He will not have his jury decided about compensatory damages or punitive damages. And he is someone who, by the court's own rules, has the right to have a jury decision. People try on those issues. Frankly, Your Honor, from my perspective, this backlog is simplistic. It's too rigid. It is a textual reading of the statute that was never intended by Congress. You have the chance available to read the statute in its interrelated nature and to make hope, to breathe life within the Ninth Circuit that victims of retaliation will not find themselves on the outskirts with respect to the remedies available under the Civil Rights Act of 1993, but in fact be equal partners, be in the same position as those that Congress intended, and that is to be equal with all that's said and done. Claim it. Thank you. Good morning. May it please the Court. I'm Lori Vogel, Counsel for Cajun Operating Assistance. There are three primary problems with Mr. Alvarado's position in this case. First of all, the United States Supreme Court on Fundamental Candidacy Constructions made it clear that you only look beyond plain language of statute where it is ambiguous. Here it is very clear under Section 102-882 of the 1991 Civil Rights Act that Congress only intended to expand or to extend compensatory and punitive damages to certain types of discrimination claims, which included claims under Title VII of the Civil Rights Act of 1964, including retaliation claims, claims under Section 503 of the Rehabilitation Act, and claims for intentional discrimination and reasonable accommodation under Sections 101 and 101b-5 of the Americans with Disabilities Act. Congress did not include in that either retaliation provision under the ADA or a claim for retaliation under the Rehabilitation Act, nor did it amend anything with respect to the ADA for age discrimination and employment type for discrimination claims or for retaliation claims. Because this shoots which areas and which types of claims it will expand the compensatory and punitive damages to, and it has done that here and it has done it clearly. Algarvado's claim or argument relies on a drastically decreasing number of district court decisions. Now that in Pennsylvania, in the Eastern District of New York, has decided to follow Kramer instead of his private decision in Edwards. Edwards is the decision that many of the other district courts have relied on, and wrote, as we know, was overruled by the Fourth Circuit albeit in an unpublished opinion. Counsel, what do you make of the EEOC Compliance Manual, which appears to support opposing counsel's argument? The problem with the EEOC Compliance Manual is that it provides no support whatsoever for that, their statement that compensatory and punitive damages are available not only for violations or retaliation under the ADA, but also under ADEA, which is absolutely not true. If you look at the footnote in the EEOC Compliance Manual, it's referencing their standard act, and it's really making the point there that they're available under the standard act, and then tagged on as well as under the ADA and ADEA. And under the Chevron decision of the United States Supreme Court, an agency's determinations can only be looked to as persuasive authority where Congress has not explicitly and plainly made its intent with respect to a particular federal statute and for where it is a reasonable or permissible interpretation. Here, it is not a reasonable or permissible interpretation, because as I said, the EEOC does not provide any support for that position. Secondly, I think it's important, and I urge you to look at the Livingston Law Review article that we cited. That was an article that was written in 1993 by the immediate former general counsel of the EEOC. It took the position that clearly, in the plain language of the 1990s, provides that section 1 and 2, A2, that only Congress's own intent, whether it was an overtact or whether, in this case, there's a strong indication because Congress did extend the intent for impunity damages to retaliation under Title VII, that Congress intended to not extend the retaliation claims under the ADA. Now, whether it's an oversight or whether there's a reason for it, this Court has to apply the plain language because it's unambiguous. And as both Ernst and one of the other judges commented on, if Congress intended to light up in a related nature these acts, the ADA and the Civil Rights Act of 1964, Title VII, if Congress intended to extend compensatory impunity damages to employment discrimination claims under the ADA and including retaliation claims, there are several ways to do it. That could have been accomplished. It could have either amended simply the remedies provision under Title VII that Title I and Title V reference via the enforcement provision of Section 12117 of the ADA or it could have somehow either revised or incorporated it into that enforcement provision or it simply could have just added to, in addition to Sections 102 and 102b-5 of the ADA, it could also have said and to Section 503, the Retaliation Act, as limited to claims under Title I or for related retaliation claims pursuant to 503 under Title I. If it's inaccurate, the enforcement provisions under Title II and Title III are not the same as they are for Title I. They are different. They are Sections 12113 and 12188. So revised, there were a couple of different ways that Congress could have refocused, either by adding the retaliation section as limited to those to potential discrimination or reasonable accommodation under the ADA, Title I, or by amending 12113 with the remedy section in Title VII. Congress did not do that. Now, one possible reason that I mentioned is the fact that retaliation under the ADA, a retaliation claim, is very broad. You don't have to be disabled to bring that claim. Anyone who participates in an investigation of a disability claim under the ADA can bring a retaliation claim. Anyone who participates in an investigation Now, the 1991 Civil Rights Act, we all agree, broadly expanded the availability of compensatory punitive damages, which Congress even noted, as did Mr. Livingston in his article. Everyone knew that was going to increase litigation. Congress had the opportunity and obviously did choose to limit that litigation to people who have actual disabilities under the ADA, to people who have active disabilities and have reasonable accommodation claims under the Rehabilitation Act, or to people who have claims under Title VII. Congress made its intent clear in that regard, and the Claimer and an increasing number of district court decisions and judges have agreed that even though we might want to expand it to an ADA retaliation claim, we can't get past the first canon of construction here. Counsel, I want to ask you about one of the cases that you submitted in your 28-J letter. Okay. The Edwards case from the Eastern District of New York is one of the leading cases disagreeing with Kramer and you've told us that Inventolino, out of that same district, has adopted Kramer. That's right. Now, I assume that Inventolino did not overrule. It was actually issued by a different district judge. Is that right? It was issued by a district judge. In the Eastern District of New York, do you know whether Inventolino is on appeal to the Second Circuit? Your Honor, I apologize. I don't know the answer to that question, but I can find out for the Court and submit it if you'd like in a supplement, a very brief supplement. If we need anything else from you, we will let you know. Okay. Please do not submit anything until we hear it. Okay. I think the language in Inventolino, though, is very powerful. You can tell that this judge is also troubled by the fact that in the plain language of the statute, the Inventolino dam and container damages do not extend to the ADA retaliation section. But he states, while the results produced by the literal text of the statute is not one of those rare cases where I may invoke the need to avoid an absurd result to override the plain language of the statute. So he realizes, and again, an increasing number of district court judges are relaxing that we might want to reach this result, but we can't do that in the light of the plain language. Are there any, in this letter, which was dated last week, are you aware of any cases going the other way that have been cited since you briefed it? Your Honor, I pulled up, I just did a general search, and those were the ones that I found. I know that there was a new district court case that Mr. Alvarado cited in his reply brief. I believe it's called Rumler. And Rumler has some of its own issues because it relies on Edwards. It's our position that that's, you know, obviously there's a split within that new district. The only other cases, district court cases, at this point that support Ms. Valparaiso's position are Ostrich, which is Eastern District of California, which, as Kramer pointed out, inserted Ulysses where operative language was the specific provisions of the ADA. That absolutely cannot be relied on. The court in Ostrich also relies on the United States Supreme Court case in Franklin that basically called that courts may extend all available remedies for violations of federal statutes unless Congress has spoken to the contrary. And so, you know, here clearly Congress has spoken to the contrary. The Leslie Wilson case simply cited the Second Tenth and Eighth Circuit decisions which simply accept the sufficiency of the evidence in support of, in support of damages, verdicts, and did not directly address the issue of their facility for ADA retaliation claims. I think that the other cases, the only other point I'd like to make, the cases that were cited by appellants with respect to the Ninth Circuit and the intent of the ADA, applying, you know, keeping in mind remedial goals and purposes of the ADA, first of all, those dealt with and discussed in uniform broadly. For example, the definitions. If you look at the Hayson case, that is just a broad definition of public services to include professional licensing. The Walsh case just simply discussed the parallel nature of the ADA and the Ninth Circuit in many respects and it was not discussed in the 1991 amendment in extending compensatory punitive damages and, you know, I just think that it's very clear there were ways on which to incorporate either the compensatory punitive damages into the AD, or excuse me, into the 1991 Civil Rights Act made a lot more sense if it intended them to extend to APA retaliation. The APA also has very remedial goals and purposes of the Retaliation Act, but Congress didn't extend compensatory punitive damages to those either. You meant the Rehabilitation Act? Excuse me, the Rehabilitation Act. Thank you, Your Honor. And, but Congress chose, for whatever reason, to limit it as far as retaliation only to violations under the Civil Rights Act and because of the clarity and specificity of the language we need to simply follow Kramer and apply the plain language statute. Thank you. Thank you, Counsel. We'll give you a minute for rebuttal if you need it. Thank you, Judge. Much has been said about the intent of Congress here. There's nothing in the record that indicates one word not one word from one senator or one congressman that they intended to exclude victims of retaliation under the ADA in the 1991 Civil Rights Act. Well, opposing counsel's position is you don't even get to intent because the plain language governs. Your Honor, I understand that she takes the Kramer position and the Kramer analysis and with respect to the commentators that we have submitted to the Court for its consideration, there is another that I would offer in asking for if there's any additional to be considered and it was also submitted in writing. It's statutory leapfrog compensatory and punitive damages under the retaliatory provision of the ADA. This is in the Missouri Law Review 179 74 Law Review 173. I'm sorry. 74 Missouri Law Review 173 and that was 2009? Winter 2009, Your Honor. Every commentator who's addressed this has come to the conclusion that the wrong result occurred in Kramer and in the analysis applied in Kramer and they've come at it from a variety of different perspectives. You've got a number of district courts that are running against you. Do you have any updates for us? Are there any district courts that are running in your favor right now? Anything new? I'm not aware that I ran the courts twice and I did not find any decisions other than those presided over the courts. But I believe the problem is I also persuaded in its analysis and represents one of the more recent decisions that is applied in 1991. The last thing I'd like to say, Your Honor, I think I'd like to come back to your question, Your Honor, because there's no sound standard interpretation that requires Congress to speak with extraordinary clarity. And that's the citation that's on over-corporating the Supreme Court decision that you'll see in a number of decisions that do that. I think what you have here is two schools of thought, actually. I'm reminded of a comment that has become much, much, especially recently by Secretary Sotomayor with respect to what point is policy-making at the district level or at the circuit court level. This is one of those moments. Either way you vote, you're making policy because you're deciding how the statute is going to be enforced. The policy, the public policy is against discrimination, it's against retaliation. The intent of Congress was against discrimination and against retaliation. And we urge you to read and interpret the statute in a manner that is consistent. All right. Thank you. Thank you to both counsel. The case that's argued is submitted for decision by the court. That concludes our calendar for today. We will be in recess until 9 o'clock a.m. tomorrow morning.
judges: Rawlinson, Bybee, Burns